(113 App. Div. 159)

### In re BULLARD.

### Appeal of CUNNINGHAM.

(Supreme Court, Appellate Division, First Department.  May 11, 1906.)

1. INTOXICATING LIQUORS—REGULATIONS—CONSENT OF ADJOINING OWNERS.

Under Laws 1896, p. 59, c. 112, § 17, requiring the written consent of two-thirds of the owners of buildings used exclusively for residence purposes, the nearest entrance to which was within 200 feet of the nearest entrance to a building to be used for the sale of liquor, a consent signed by the husband of the owner of a building in his own name, and without the authority or knowledge of his wife, was not valid.

2. SAME.

On proceedings for the revocation of a liquor tax certificate, evidence *held* to show that the written consents of two-thirds of the owners of residences, the nearest entrances to which were within 200 feet of the nearest entrance of the place of sale of liquors, had not been procured, as required by Laws 1896, p. 59, c. 112, § 17.

3. COSTS—ANNULMENT OF LIQUOR TAX CERTIFICATE.

Where one procured a liquor tax certificate relying on consents of adjacent residence owners, filed by a former owner of the premises at which he wished to sell liquor, and no action had been taken by the state or by the adjoining property owners to annul the certificate held by the prior owner on the ground of insufficiency of the consents filed, and the certificate of the subsequent owner is annulled on this ground, costs will not be awarded against him.

Appeal from Special Term, New York County.

In the matter of the application of Sibbel D. Bullard for revocation of the liquor tax certificate No. 1,898, issued to Edward F. Cunningham. From an order canceling the certificate, Cunningham appeals. Affirmed.

Argued before O'BRIEN, P. J., and PATTERSON, INGRAHAM, LAUGHLIN, and CLARKE, JJ.

Emanuel Blumenstiel, for appellant.
James R. Knapp, for respondent.

LAUGHLIN, J.  The petition for the revocation of the liquor tax certificate was made by a citizen, a resident taxpayer of the city of New York, who owned premises together with a building occupied exclusively for residence purposes, the nearest entrance to which was within 200 feet of the nearest entrance to the premises in which the traffic in liquor was carried on, and for which premises a consent in the form required by section 17 of the liquor tax law  (Laws 1896, p. 59, c. 112) had been executed by her husband, but without her knowledge or authority.  After the appellant and the deputy commissioner of excise filed answers to the petition, the court appointed a referee to take evidence on the issues raised by the answers, and the order was made upon the pleadings,  proceedings, and evidence taken and reported by the referee.  The learned justice who presided at the Special Term filed a memorandum opinion, indicating that the decision was made upon the ground that the necessary consents of the owners of buildings occupied exclusively as residences, the entrances to which were within 200 feet of an entrance to a hallway of the building in which the licensed

premises were situated, from which hallway a door opened into the saloon, had not been obtained. The final order, however, recites that the court found that all of the material facts stated in the petition were true. In these circumstances, even if the views expressed in the opinion of the court were erroneous, it does not follow that the appellant is entitled to a reversal of the order.

If any ground assigned in the petition is sustained by the evidence, the order must be affirmed. The ground stated in the opinion of the court presents an interesting legal question as to where the measurements should start from the saloon. It is conceded that there was an entrance to the saloon from Forty-Second street, some distance west of Madison avenue, and from both Forty-Second street and Madison avenue at the corner of the building at the junction of the two streets. The premises for which the license was sought and obtained constitute all of the ground floor, except a hallway along the southerly end or side, of a three-story building. The upper floors were leased to other tenants. The only entrance to the building, other than those to which allusion has already been made into the licensed premises, was from Madison avenue, some 30 or 35 feet south of Forty-Second street. From the hallway stairways led to the basement and to the upper floors, and there was also an elevator for the use of tenants and their customers. There is evidence tending to show that after appellant's predecessor obtained his lease, but before the liquor tax license was issued, a door was cut through the wall separating the licensed premises from the hallway. The appellant contends that neither the entrance from the street to the hallway nor from the hallway to the saloon was an entrance to the licensed premises, within the intent of the statute. The respondent contends that the entrance from the street to the hallway was an entrance to the licensed premises, from which the measurements should be taken, and evidently the trial court was of that opinion. In the view we take of the case, however, it is not necessary to decide that point.

The appellant obtained no consents of property owners when he filed his application for a license in the year 1905. He referred to and relied upon the consents obtained the previous year by Patrick O'Keefe, to whom the first liquor tax certificate for trafficking in liquors on the premises was issued. In these circumstances, the right of the appellant to the liquor tax certificate depends upon the validity and sufficiency of the consents filed by his predecessor. Matter of Tonatio, 49 App. Div. 84, 63 N. Y. Supp. 560; Matter of Lyman, 34 Misc. Rep. 296, 69 N. Y. Supp. 781; sections 17 and 28 of the liquor tax law (Laws 1896, pp. 59, 69, c. 112). O'Keefe filed with his application for a liquor tax certificate formal consents, purporting to be Nos. 302, 306, 308, and 310 on the westerly side of Madison avenue, and Nos. 305 and 309 on the easterly side of the same avenue, and he represented in his application that there were only seven buildings used exclusively as dwellings the nearest entrance of which was within 200 feet of the nearest entrance to the licensed premises, and that he filed therewith consents signed by the owners of six of those dwellings. The building which it is conceded should have been counted, and for which no consent was filed, was No. 303 Madison avenue. The evidence shows that the consent filed

for No. 302 Madison avenue was signed by the husband of the owner of the building in his own name, and without the knowledge or authority of his wife. It is clear that under the statute that was no consent, and cannot be counted. There is a serious question about the consent filed for No. 309 Madison avenue. Evidence was introduced by respondent tending to show that it was obtained on misrepresentation, but that is controverted. It was in form revoked after it and the application had been filed, but before the liquor tax certificate was issued. Inasmuch as we have reached the conclusion that there were at least eight instead of seven buildings that should have been counted, figuring on the basis that the corner entrance was the proper and only point for commencing the measurements, it also becomes unnecessary to decide whether the consent for No. 309 Madison avenue was valid, or whether the revocation of the same was timely made.

The respondent contends that No. 304 Madison avenue should be counted, but the appellant claims otherwise. The undisputed evidence shows that the building thereon was erected as a private residence, and that it had been so occupied by the present owner for a period of 22 years. He is a physician, and his sign was upon the door and side of the house. No part of the house is set apart exclusively for his office. He receives his patients in the library and in other parts of the house. The members of his family use the entire house as a private residence. It is exceedingly doubtful whether that building is not used exclusively as a dwelling, within the spirit and intent of the statute. Matter of Lyman, 34 Misc. Rep. 296, 69 N. Y. Supp. 781; Matter of Ruland, 21 Misc. Rep. 504, 47 N. Y. Supp. 561; Matter of Rasquin, 37 Misc. Rep. 693, 76 N. Y. Supp. 404. It is not essential to a decision of this appeal that we should decide whether such use of his own residence by a professional man debars him under the statute from a voice in the question as to whether trafficking in liquors should be permitted within 200 feet of his home, and, therefore, probably a definite opinion on the subject should not be expressed.

The evidence shows that the entrance to the building No. 301 Madison avenue is on Madison avenue, and while it does not show a precise measurement from the entrance thereof to the entrance of the licensed premises at the corner of Madison avenue and Forty-Second street, it shows that the entire front of the building No. 301 Madison avenue is within 200 feet of said corner entrance to the saloon, and therefore the entrance to No. 301 Madison avenue must be within the 200 feet measurement made from the entrance conceded to be the proper starting point.

The appellant in his application for a liquor tax certificate filed on the 19th day of April, 1905, to continue trafficking in liquors on the premises for which O'Keefe obtained a liquor tax certificate in 1904, stated that he filed no consents, but relied upon the consents filed by O'Keefe, and represented that there were eight buildings occupied as dwellings, the entrances to which were within 200 feet of the entrance to the licensed premises, and that O'Keefe had filed the consents of the owners of six of such dwellings. The fair inference is that the eighth building was No. 301 Madison avenue, although it is not so stated in the application. The learned counsel for the appellant does not point

to any evidence showing that No. 301 is not within the statutory distance. In his points as printed the only claim he makes with respect to No. 301 is that it has not been satisfactorily shown that it was used exclusively as a dwelling. In the discussion of the evidence in his points he classes it with buildings conceded to be within 200 feet of the corner entrance, and with others which he expressly points out are not within the distance; but further on in his points he summarizes his claims concerning each building, and, after stating in the brief as printed that his contention concerning it is that there was "no sufficient proof of the building being used exclusively as a dwelling," we find added in writing the following, "Not within the distance." We find the same notation in writing on his points with respect to No. 303, which elsewhere in the points is expressly conceded to be within the statutory distance.

A survey was introduced by each party, each of which was shown to have been drawn to a given scale. No. 301 is the second building on the east side of Madison avenue north of Forty-First street. Applying a rule to either of these surveys, it appears that no point in the front of the building No. 301 Madison avenue is more than 200 feet distant, measured in a straight line, from the entrance to the licensed premises at the corner of Forty-Second street and Madison avenue, unless the premises No. 299, at the northeast corner of Madison avenue and Forty-First street, have a frontage of less than 15 feet on Madison avenue. The respondent's survey shows that the frontage of that building on Madison avenue is more than 25 feet, which are the figures given on the diagram annexed to the moving papers. Counsel for respondent contends that said building No. 301 Madison avenue is undisputably within the statutory distance. We find evidence that it is and no evidence to the contrary.

We now come to a consideration of the appellant's contention that the building No. 301 was not shown to have been used exclusively as a dwelling. The building was used by Miss Ida Bliss. She was an invalid, and was absent from the city owing to ill health at the time of the hearing, and her testimony was not obtained. Her butler, who had been in her employ about nine years, testified that she occupied the building as a private residence, and that no business was conducted therein. She closed her house for the summer on the 2d day of June, 1904, and it remained closed until the 28th day of September thereafter, when she returned with her servants and reoccupied it. Mr. Frederick Bullard, the son of the petitioner, who resided at No. 302 Madison avenue, and had lived there all his life (27 years), was well acquainted with her, and had on occasions visited Miss Bliss at 301 Madison avenue, testified that she had occupied the building as her residence since she was born; that there was no sign on the building, and never had been. It is difficult to see how there can be any question as to the sufficiency of the evidence. It clearly shows that the building was exclusively used as a dwelling. It thus appears that there were at least eight dwellings the nearest entrance to which was within 200 feet, measured in a straight line, from the entrance to the licensed premises at the corner of Madison avenue and Forty-Second street. There being only five legal consents, at most, which was less than two-thirds, it

clearly appears that the necessary statutory consents of property owners to traffic in liquors upon the premises for which the liquor tax certificate was issued were not obtained and filed, and that the liquor tax certificate was properly revoked. The state and the property owners should have investigated the validity and sufficiency of the consents during the life of the first certificate, and not have suffered a subsequent purchaser to be misled to his prejudice by appearances. The affirmance should therefore be without costs.

It follows that the order should be affirmed, without costs. All concur.